In the Matter of CACHE VALLEY SYN-
DICATE TRUST, Successor in Interest
to Financial Service Company, Inc.

No. 15396.

Supreme Court of Utah.

Oct. 30, 1978.

**526**

Robert V. Phillips, and Robert A. Echard of Patterson, Phillips, Gridley & Echard, Ogden, for appellant.

David R. Daines, and N. George Daines, III, of Daines & Daines, Logan, for respondent.

HALL, Justice:

Appeal from a judgment of the District Court of Cache County which established priorities among classes of claimants against the assets of a trust in the course of statutory proceedings initiated by the trustee by assignment for the benefit of creditors.[1] The trust entity is commonly known as Cache Valley Syndicate Trust ("CVST"). Appellants, Elmer G. Erickson and Bonnie L. Erickson, are claimants who protest that they were unfairly and unlawfully relegated to members of inferior claimant classes by the judgment.

The trial court made no findings of fact or conclusions of law. Moreover, there is little in the record which could properly be categorized as "evidence." No witnesses were sworn, and no documents were marked and received after opportunity for objection. The "record" on appeal seems to reflect the following history:

In 1971 an insolvent corporation, Financial Services Company, Inc. ("FSC") devised a plan for satisfying persons who were asserting claims against it. The claimants included creditors (lenders of money and suppliers of goods and services), investors (people who had made money available to FSC on some basis other than loan), and perhaps shareholders. Under the plan, FSC transferred its assets to the trustee of the CVST trust. The trustee then issued to the claimants certificates of interest in the trust in exchange for their claims against FSC. The certificate holders are cestuis of the trust and nothing more. The certificates cannot be construed as promissory notes.

The declaration of trust provides specifically for the continuing conduct of business by the trustee and defines the rights of certificate holders as (1) the right to share in the net income on an annual basis, and (2) the right to a pro rata share of residual assets in the event of trust termination. The trust purposes are entirely

---

1. Provided for by U.C.A., 1953, 6–1–1 et seq.

inconsistent with the concept of common law assignment for the benefit of creditors; and the trustee, in practice, did not undertake liquidation and distribution of assets. On the record before us, the only reasonable conclusion is that claimants against FSC accepted certificates in payment of their claims and not as interim evidence of status in the course of the kind of liquidation proceeding which an assignment for the benefit of creditors constitutes.

Between 1971 and 1976, the CVST trustees incurred various debts in the name of the trust. In July of 1976, the trustees elected to wind up the trust's affairs by a statutory assignment for the benefit of creditors. They did so by assigning all trust assets by an instrument which, together with its attachments, instructed the Assignee to pay, in the order named:

1. Costs and expenses of administration under the applicable statutes.
2. Taxes lawfully assessed against trust property.
3. Secured creditors.
4. Creditors whose claims are for labor or would have a priority under the Federal Bankruptcy Act.
5. Other creditors in subclass priorities to be determined by the court.

The instrument also nullifies any provision thereof which "reserves any interest in the assigned property or any part thereof to the assignor or for his benefit before all his existing debts are paid."

The judgment appealed from establishes priorities which are a clear departure from the intent expressed by the instrument of assignment. It assigns first priority to unsecured creditors including certificate holders who are the beneficial owners of the assigned assets. It assigns second priority to the trustees, whatever the basis of their claims, who held office when Elmer Erickson misappropriated trust funds. It assigns last priority to Elmer Erickson and Bonnie Erickson, presumably because Elmer is guilty of having misappropriated trust funds and Bonnie is his wife.

For various reasons the judgment must be reversed and the cause remanded. First, the certificate holders, as cestuis of the trust, cannot be designated as creditors or given equal status with its creditors in a dissolution proceeding. The trustee acting for the beneficial owners cannot salvage for them, by labeling them creditors, assets which would otherwise be totally available to actual creditors. The beneficial owners were in fact the assignors, through the trustee, who acted for them and to interpret the assignment as reserving to the assignor an advantage to the injury of creditors invalidates the assignment.[2]

Second, the judgment established a different set of priorities from those of the assignment for creditors and in fact reserves to the asset owners certain interests in the assigned assets in violation of the instructions contained in the assignment. The applicable statute [3] provides that the preferences of the assignment shall be preserved in any court order. The instrument of assignment clearly contemplates that certificate holders shall have a status inferior to actual creditors and refers to certificate holders as "residual creditors." As was noted above, they are in fact residual owners and entitled to distribution only after creditors are satisfied.

Third, appellant Bonnie Erickson is relegated to the least favored claimant class without justification apparent from this record. Appellant Elmer Erickson does not question the propriety of a judgment which classified his claims, to the degree they are founded on certificate ownership, as junior to all others. The record on appeal does not, however, provide any support for a conclusion that appellant Bonnie Erickson is subject to the same opprobrium as Elmer Erickson. Elmer Erickson has apparently entered a plea of guilty to charges of felonious misconduct in connection with his management of trust assets as a trust employee. He has, as a condition of probation, agreed

2. 6 Am.Jur.2d, Assignment for Benefit of Creditors, § 55.

3. U.C.A., 1953, 6-1-10.

to assign his beneficial interest units as some restitution for his misappropriation of trust funds. If his wife was an accomplice or co-conspirator in the crimes or if she derived her beneficial interest from him after, or as a result of his criminal conduct, it may be appropriate to impose on her interest the same constructive trust as has, in effect, been imposed on his interest. It is not consistent with established concepts of equity or due process, however, for the court to disfranchise her without evidence in support thereof.

■ Finally, the record does not justify summary disregard of Elmer Erickson's claims as a creditor if properly and timely filed. The mere fact that he is a felon does not cancel the trust's obligations to him if any exist. The validity of his claims is the subject of current litigation in the course of which the effect of his misconduct on his right to payment will be determined. If the court in that litigation enters judgment against the trust in his favor, nothing in the record on appeal here could justify the denial of his claims, subject of course to his obligation to make restitution of the trust funds misappropriated. In any event, full and complete distribution of residual assets to beneficial owners must await determination of the validity of Elmer Erickson's claims.

The matter is reversed and remanded for further action consistent with this opinion.

ELLETT, C. J., and CROCKETT, MAUGHAN and WILKINS, JJ., concur.